IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Calvin Ben Collins, | ) | Civil Action No. 4:09-696-TLW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Auto-Owners Insurance Company, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is currently before the Court on Defendant Auto-Owner's (hereinafter "Auto-Owners" or "Defendant") pending motion for summary judgment. Plaintiff filed the instant action on March 19, 2009 based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. # 1). On August 26, 2010, Defendant filed a motion for summary judgment. (Doc. # 48). Plaintiff filed a response in opposition to Defendant's motion for summary judgment on September 24, 2010. (Doc. # 55). On October 4, 2010, Defendant filed a reply to Plaintiff's response in opposition. (Doc. # 57). The Court heard oral argument on this motion from counsel on October 15, 2010. For the reasons set forth in this Order, Defendant's motion for summary judgment is granted as outlined herein.

**Procedural History**

On May 31, 2002 Plaintiff Calvin Collins (hereinafter "Plaintiff" or "Collins") was involved in an automobile accident with Mark Frasier who was an uninsured motorist.[1]  At the time of the

---

[1]Plaintiff sets forth in its memorandum in opposition a number of facts regarding the underlying accident case in their brief.  The Court does not find it necessary to recite all of those

accident between Collins and Frasier, Collins had uninsured motorist (UM) coverage with Auto-Owners. The Plaintiff had three cars insured with Auto-Owners each with $500,000 UM coverage for total UM coverage of $1,500,000.

In 2004, the Plaintiff filed suit against Frasier in Florence County. This lawsuit was assigned Civil Action No. 2004-CP-21-488. In May of 2006, the case was tried before a jury. The trial lasted an entire week and both parties made directed verdict motions which were denied by the state trial court. On Friday, May 19, 2006, the jury returned a verdict for the Defendant Frasier. The Plaintiff then filed an appeal to the South Carolina Court of Appeals. In 2008, the South Carolina Court of Appeals issued an opinion in favor of Frasier. Collins v. Frasier, 662 S.E.2d 464 (S.C. App. 2008). The Plaintiff then filed a petition for writ of certiorari to the South Carolina Supreme Court. The petition was denied.

This lawsuit against Auto-Owners was initially filed in state court in April of 2006, shortly before the trial of Collins v. Frasier. Auto-Owners removed the case to Federal Court based on diversity jurisdiction. In September of 2007, the case was dismissed without prejudice.[2] After the South Carolina Supreme Court denied certiorari to review the Court of Appeals' decision, this

---

facts here.

[2]    The initial bad faith action in this case was filed on April 27, 2006 in state court. It was removed to this Court on May 18, 2006, captioned Calvin Ben Collins vs. Auto-Owners Insurance Company, Civil Action No. 4:06-1531-TLW. Plaintiff moved to compel discovery of the claim file on 09/14/06 (Docket # 16), and Defendant argued that it should not be required to produce that claim file due to the pendency of Collins v. Frasier. The Court heard the Plaintiff's Motion to Compel on 09/26/06 (Docket # 24), and thereafter on 10/16/06 (Docket # 29), entered a Consent Order to Stay the Scheduling Order until disposition of all pending motions. Thereafter, the parties agreed to a consent dismissal of the bad faith and breach of contract action, without prejudice, until after resolution of the appeals in Collins v. Frasier, (Docket # 39). On 02/19/09, the S.C. Supreme Court denied cert. in Collins v. Frasier. Thereafter, on 03/19/09, this bad faith and breach of contract action was re-filed, Civil Action No. 4:09-cv-00696-TLW.

lawsuit was re-filed in Federal Court in March of 2009. The complaint alleges the Plaintiff made a claim with Auto-Owners for payment of UM coverage, that Auto-Owners refused to make full payment under the UM coverage and that Auto-Owners wrongfully denied benefits due under the coverage. The Complaint further alleges that Auto-Owners' "actions and failures to act were unreasonable, negligent, arbitrary, capricious, in bad faith, and in breach of its duty of good faith and fair dealing in the following particulars, to-wit: (a) In failing to promptly and reasonably compromise, settle, or pay the uninsured motorist claim; (b) In failing to evaluate, investigate, and value the uninsured motorist claim honestly, reasonably, and in good faith; (c) In failing to offer the Plaintiff their honest and good faith valuation of the uninsured motorist claim; (d) In failing to promptly admit the amount of uninsured motorist coverage limits applicable."

### Facts

During the Collins v. Frasier litigation, correspondence relevant to the issues in this case was exchanged between counsel for the Plaintiff and counsel for the Defendant Frasier (Attorney Michael Nunn), as well as in-house counsel for Auto-Owners (Attorney Kathleen Lopilato).[3] In correspondence dated February 16, 2006, Plaintiff's counsel wrote attorney Nunn noting:

> As you will recall, at the outset of this case my clients made a demand of the policy limits of $1.5 million to settle. Auto-Owners did not respond and it was not until your letter of November 17, 2005, that the Carrier conceded that there was, in fact, $1.5 million of coverage. Since that time, you have confirmed that Auto-Owners is offering $100,000.00 to settle this case.
>
> ... my client has authorized me to settle the case for $1 million, well within the policy limits.

---

[3]Attorney Michael Nunn was hired by Auto-Owners to defend the UM claim filed by Plaintiff and his wife against Mark Frasier. Kathleen Lopilato is in-house counsel for Defendant Auto-Owners.

As you are aware, first party carriers owe a statutory and contractual duty of good faith and fair dealing to their insureds. See Nichols v. State Farm, 279 S.C. 336 (S.C. 1983); S.C. Code §38-9-320. That is to say, Auto-Owners has an obligation to honestly value this case in good faith and to offer my client, their insured, that value.

It is inconceivable to me that Auto-Owners has honestly and fairly valued this case at $100,000.00.

. . .

As I have indicated to you before, I believe that bad faith failure to settle is actionable, even without a judgment at all in the underlying liability action. See Myers v. State Farm, 950 F. Supp 148 (D.S.C. 1997), (finding judgment against at-fault driver was not a prerequisite to an action against UIM Carrier for bad faith refusal to settle UIM claim). Certainly, if my client obtains a verdict in excess of $100,000.00, we will have no choice but to bring an action for bad faith refusal to pay an insurance claim against Auto-Owners.

Plaintiff indicates that after this correspondence, a memo to Kathleen Lopilato was written by Auto-Owners' adjuster, Lorraine Frederick on March 1, 2006, indicating:

[plaintiff's counsel] has expressed that he feels that we have acted in bad faith for refusing to settle the UM claim of Mr. Collins. As you know, their demand was completely out of the realm of reality and we made the the $100,000 offer as our initial and only offer since they refused to get real about the value of this claim.

On April 5, 2006, Plaintiff's counsel wrote Attorney Nunn another letter:

As you will recall, at the outset of this case my clients made demand of the policy limits of $1.5 million to settle. Auto-Owners did not respond or even admit that there was $1.5 million worth of coverage until after Summary Judgment was denied on September 20, 2005. Since that time Auto-Owners has offered $100,000.00 to settle this case. My clients have countered with an offer of $1.3 million and Auto-Owners has not responded.

As I have indicated to you before, as my client's insurance carrier, Auto-Owners owes my client duties of good faith and fair dealing.

As I have further indicated, I believe that the duty of good faith and fair dealing requires that Auto-Owners honestly value this case and offer their insured that valuation. Auto-Owners

has not done so. As a result my client has incurred additional expenses in completing preparation for trial.

Therefore, if Auto-Owners does not tender an offer of their good faith valuation of this case within the next ten (10) days, I will have no choice but to commence an action for bad faith refusal to pay an insurance claim.

In correspondence dated April 21, 2006 and addressed to Attorney Nunn, Plaintiff's counsel indicated:

. . . I understand that Auto-Owners' failure to respond to my letters of February 16, 2006, and April 5, 2006, is not the result of inadvertence. Therefore, I assume that Auto-Owners has no intent of making any offer beyond $100,000.00 to settle the pending claim.

As I have indicated to you, I believe that Auto-Owners handling of this case is in bad faith. I have prepared the enclosed draft Complaint which I am ready to file.

In correspondence dated April 25, 2006, Attorney Lopilato wrote Plaintiff's counsel the following:

This letter is to acknowledge receipt of your letters of April 5, 2006 and April 21, 2006. Please take this correspondence as our formal response to your demands for settlement in the amounts of $1.5 million and lately $ 1.3 million. As you know, we have made a $100,000 offer. We believe that was a fair and reasonable amount, and we do not believe it would be reasonable to pay your demand amount of $1.3 million.

This is a case of disputed liability and disputed causation. We have acted reasonably in trying to consider all of the facts and discover all of the facts necessary to complete an evaluation in this most complicated claim.

As you know, Mr. Frasier lost consciousness because of a medical condition. We believe that a jury may find that he had a sudden medical emergency and therefore was not liable for this loss. Accordingly, there would be no underinsured motorist coverage owed to the insured if the tortfeasor was not at fault.

Further, even if Mr. Frasier is found to be liable, there is a question as to what injuries are related to the accident. As you know, we have a big disagreement as to whether all of the medical expenses and conditions that Mr. Collins suffers from are a result of this accident. I am not going to reiterate all of the facts that will be issues for trial. It is not bad faith to submit a dispute to a court of law. We are willing to always consider and evaluate the

reasonableness of any settlement demand you feel you would like to communicate on behalf of your client.

We regret that you feel it is necessary to proceed with a complaint for bad faith on a case that involves many issues that must apparently be decided by a trier of fact.

Plaintiff's counsel responded to Attorney Lopilato on May 3, 2006:

I am in receipt of your letter dated April 25, 2005, responding to my letters of April 5, 2006 and April 21, 2006. Frankly, I am deeply concerned that Auto-Owners has not yet tendered its honest and good faith evaluation of this claim.

The time for posturing is over. We are not interested in your bargaining position. Under your contract with my client, Auto-Owners owes a duty to offer him your company's honest and good faith valuation of this claim.

Your letter indicates that "It is not bad faith to submit a dispute to a court of law." You seem to be of the legal opinion that because this is an uninsured motorist claim and you have stepped into the shoes of the uninsured motorist, you are in an adversarial position with Mr. Collins and owe him no duty to value and settle his claim in good faith.

This, however, is not the law in South Carolina. On the contrary, our courts have long held that insurers owe a duty of good faith and fair dealing to their insureds. See Nichols v. State Farm, 279 S.C. 336 (S.C. 1983). This duty requires "that neither party will do anything to impair the others rights to receive benefits under the contract." Nichols, 306 S.E.2d at 618. This duty has been recognized in the context of uninsured motorist claims. See Jefferson v. Allstate, 673 F. Supp. 1401 (D.S.C. 1987)(attached). In Jefferson, Judge Anderson considered a carrier's motion to dismiss their insured's action for bad faith refusal to settle an uninsured motorist claim. Judge Anderson denied the motion to dismiss, finding that there was a duty to settle an uninsured motorist claim. In doing so, the court noted that "the fact that an insurance company and its insured hold adverse positions on the issue of liability 'does not materially distinguish uninsured motorist insurance from first party insurance with respect to the existence of a duty on the part of the insurer to handle the insured's claim fairly and in good faith.'" Jefferson, 673 F. Supp. 1401, 1404.

You have retained as local counsel, Michael Nunn, Esquire. Mr. Nunn has been practicing law in South Carolina for many years and is a well-respected member of the Florence County Bar. I personally have a great deal of respect for Mr. Nunn and his skills as an adversary. I am sure Mr. Nunn has advised you of this case law. I would be shocked if it is revealed, after the development of discovery in the pending bad faith action, that Mr. Nunn had either recommended that Auto-Owners had no duty to disgorge their good faith valuation of this claim to their insured or that he evaluated the claim at $100,000.00. Be that as it may, I

suggest you consult the amount of reserves that your company has set aside for this claim as an indication of what the fair valuation of this case is at this juncture.

At any rate, so that we are clear as to the specific dispute that necessitates trial on May 15, 2006, please respond yes or no to the following questions:

1.     Do you admit that Auto-Owners owes Mr. Collins a duty to offer him its honest and fair valuation of his claim?

2.     Has Auto-Owners offered Mr. Collins its honest and fair valuation of his claim?

Thereafter, on May 4, 2006, Lopilato wrote the following (set forth in part):

I am in receipt of your May 3, 2006 correspondence that you faxed to my office. You should not be concerned that Auto-Owners has not yet tendered its honest and good faith evaluation of this claim. I am the person responsible for supervising this claim in Home Office Legal and I can assure you that after taking all the facts an circumstances of this claim into consideration, I have tendered what I believe to be a good faith evaluation of what this claim should settle for.

I take exception to your assertion that I have been posturing. This is not a bargaining position. I do not believe that I am in an adversarial position with my insured, Calvin Collins. I believe that I have a disagreement with Mr. Collins and/or his legal representative as to what a reasonable settlement would be in light of all the facts and circumstances of this claim.

You seem, to believe that the amount of reserves that a company has set aside to pay a claim is the direct indication of what fair evaluation of the case should be. You are mistaken. Fair settlement value is but one of several factors to consider. How a company sets reserves and what factors go in to a proper reserve require a dissertation which I will spare you at this time.

You should note that I do not need to consult the amount of reserves that my company has set aside as that reserve in this case is set me. What I believe your client should accept as a settlement (based on consideration of all the facts and circumstances of this claim of which I am aware and based on my 19 years of legal experience) is just one consideration in the determination of that reserve.

You asked me to answer yes or no to two questions. The first question was whether I admit that Auto-Owners owes Mr. Collins a duty to offer him its honest and fair evaluation of his claim. This is not the specific dispute that necessitates a trial, nor is it the precise duty of an insurer as set out in South Carolina cases.

It is admitted that Auto-Owners Insurance Company owes a duty of good faith to Mr. Collins. We have made an offer of $100,000 which we believe is a good faith offer to resolve this claim.

Do you admit that an insured also has a good faith obligation as a party to the insurance contract? Again, this is a claim that involves serious questions of liability and serious issues with respect to medical causation. Has your client considered that Auto-Owners may not have a legal obligation to pay him compensation if Mr. Frasier is not legally liable to him?

We at Auto-Owners always strive to act in good faith and to exercise reasonable case in defending any action on a policy brought by an insured or in evaluating offers of compromise settlement. I believe that the important inquiry is whether a party to a contract is acting unreasonably.

The fact that an insurance company and its insured hold contrary positions on the issue of liability does not mean that the insurance company has taken an unreasonable position. The fact that an insurance company and its insured do not agree on the issues of liability or causation does not mean that the insurer is handling the insured's claim unfairly or in bad faith. The fact that a jury might agree with the insured over the opinion of the insurer does not mean that the insurer is proceeding in bad faith.

In your correspondence of May 3, 2006 you wanted to be clear as to the specific dispute that that necessitates trial on May 15, 2006. I do not think that the questions that you asked clarify the specific dispute. The disputed issues of liability and causation are not obscure and have been and are being litigated. Quite simply, if not resolved, will be determined by a judge or jury.

Finally, on May 9, 2006 Plaintiff's counsel sent the following correspondence to Attorney Lopilato:

I am in receipt of your letter of May 4, 2006. I understand from your letter that it is your representation that Auto-Owners' offer of One Hundred Thousand ($100,000.00) Dollars represents your good faith, honest, and internal evaluation of this claim. I further understand that your offer of One Hundred Thousand ($100,000.00) Dollars is your maximum offer.

It is critical that we be clear and if I am incorrect in either respect, please advise me immediately.

I have conveyed these representations to my clients and have discussed with them at length your letters of April 25, 2006 and May 4, 2006. In response, Mr. Collins and Mrs. Collins have directed me to proceed to litigate these matters. In sum, Mr. Collins and Mrs. Collins understand that, as with all litigation, there is a possibility of a zero verdict; however, they believe that the most likely outcome is a verdict in excess of One Hundred Thousand ($100,000.00) Dollars.

Quite frankly, neither they nor I believe that your One Hundred Thousand ($100,000.00) Dollars offer represents your honest, good faith, internal evaluation. I believe that the reserves you have set will bear that out. Both the Collins and I believe that your [sic] have, in fact, internally valued the claim in excess of One Hundred Thousand ($100,000.00) Dollars, but that you have represented a lower valuation to my clients in an effort to induce them to accept a settlement of an amount less than your valuation of the claim. As I have indicated before, I believe such conduct is in bad faith and is actionable.

Nevertheless, we are left at this point with your representation that One Hundred Thousand ($100,000.00) Dollars is your honest, good faith, internal valuation and your maximum offer. Given that, we have no alternative but to proceed to trial.

This correspondence between the parties continued up until the eve of trial. The state court case of <u>Collins v. Frasier</u> proceeded to trial and was tried beginning on May 15, 2006. The Jury returned a defense verdict, after finding Frasier suffered a sudden, unforeseeable incapacity to operate his vehicle. <u>See</u> <u>Collins v Frasier</u>, 662 S.E.2d 464, 465 (S.C. Ct. App. 2008). The verdict was affirmed on appeal. After certiorari was denied by the South Carolina Supreme Court on February 19, 2009, the instant case was filed on March 19, 2009.

## **Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted when the pleadings, responses to discovery, and the record reveal that "there is no genuine issue as to any material fact and . . .the moving party is entitled to a judgment as a matter of law." <u>Charbonnages de France v. Smith</u>, 597 F.2d 406 (4th Cir. 1979). Once the movant has met its burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).

A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). However, the

party opposing summary judgment may not rest upon mere allegations or denials and, in any event, a "mere scintilla of evidence" is insufficient to overcome summary judgment. Id. at 249-50.

When considering summary judgment motions, courts must view the facts and the inferences therefrom in the light most favorable to the party opposing the motion. Id. at 255; Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990); Cole v. Cole, 633 F.2d 1083 (4th Cir. 1980). Indeed, summary judgment is only proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) (internal quotations omitted).

### Law/Analysis

As to Plaintiff's first cause of action for breach of contract, Auto-Owners asserts that it is entitled to summary judgment because it has not breached the contract of insurance as there is no claim for insurance proceeds owed under the insurance contract. Defendant asserts that there is no contractual duty to pay a UM claim before the insured obtains a judgment against the tortfeasor: "recovery under the uninsured endorsement is subject to the condition that the insured establish legal liability on the part of the uninsured motorist." Lawson v. Porter, 180 S.E.2d 643, 644 (S.C. 1971). Defendant indicates that the Plaintiff has never obtained a judgment against the uninsured motorist Frasier as the jury returned a verdict for him after finding that he suffered a sudden, unforeseeable incapacity to operate his vehicle. Collins v. Frasier, 662 S.E.2d 464, 465 (S.C. App. 2008). Additionally, where an underlying tort action is decided adversely to the insured, the insured is not entitled to UIM coverage because the insured is not entitled to any damages from the driver of the

underinsured motor vehicle. <u>McDill v. Nationwide Mutual Insurance Company</u>, 627 S.E.2d 749 (S.C. App. 2006).[4]

Defendant asserts that Plaintiff's own expert witness has conceded that no amount is owed under the contract of insurance. This witness, Kelly Morgan, testified that:

> Q.     And what amount does Auto-Owners owe today on the uninsured motorist claim contractually?
>
> A.     Zero as per trial.
>
> Q.     Right. Well, before the trial contractually did Auto-Owners owe anything on the uninsured motorist claim?
>
> A.     I think they did.
>
> Q.     Contractually under the insurance contract?
>
> A.     Ethically they did, I think. Not contractually. Contractually –
>
> Q.     I'm talking about contractually.
>
> A.     Okay. No.
>
> Q.     Contractually after the trial Auto-Owners owed nothing. Right?
>
> A.     Right.
>
> (Morgan Deposition, pp. 98, 99)

The Plaintiff's expert further testified that:

> Q.     The written contract of insurance, did Auto-Owners breach the written contract of insurance?
>
> A.     No.
>
> Q.     And I think we have established that nothing is owed on Mr. Collins'

---

[4]The Court notes that the <u>McDill</u> case involves UIM coverage and this case involves UM coverage.

uninsured motorist claim from a contractual point of view?

A.    No.

(Morgan Deposition, p. 119)

Defendant asserts that Morgan's testimony indicates that the purpose of the uninsured motorist trial was to determine what amount, if anything, was contractually owed by Auto-Owners on the uninsured motorist claim. (Morgan Deposition, p. 98).   Defendant argues that because it is undisputed Auto-Owners has not breached the contract of insurance as it owes nothing on the Plaintiff's UM claim, Auto-Owners is entitled to summary judgment as to the Plaintiff's first cause of action for breach of contract.

Plaintiff opposes Defendant's motion for summary judgment as to their first cause of action and indicates that in its review it finds no statement anywhere in the policy that indicates that a judgment against the uninsured driver is necessary before the carrier becomes contractually obligated to pay their insured's claims for Uninsured Motorist coverage.   Plaintiff argues that an insurance carrier is obligated to pay uninsured claims, irrespective of whether there is a judgment, in those amounts which the carrier agrees that their insured is legally entitled to recover.   Plaintiff asserts that the following policy language is relevant:

The policy at issue contains the following language:

**2.    COVERAGE**
    a.    **We** will pay damages any person is legally entitled to recover from the owner or operator of an **uninsured automobile** for:
        (1)    **bodily injury** sustained when occupying or getting into or out of an **automobile** which is covered by **SECTION II – LIABILITY COVERAGE** of the policy; and
        (2)    **property damage** to **your automobile** and to property of **yours** or a **relative**.
        * * *

c.     The **bodily injury** and **property damage** must be accidental and arise out of the ownership, maintenance or use of the **uninsured automobile**.

d.     Whether an injured person is legally entitled to recover damages and the amount of the damages shall be determined by agreement between the injured person and **us**. **We** will not be bound by any judgments for damages obtained or settlements made without **our** written consent.

(Ex. 1, p. AO-01000)(emphasis in original).

Plaintiff asserts that the Defendant carrier in this case agreed that the Plaintiff was legally entitled to recover One Hundred Fifty Thousand ($150,000.00) Dollars, because they valued the claim at that amount internally. (Ex. 1, AO-00643). Accordingly, Plaintiff asserts that pursuant to the contract, they were obligated to pay that internal valuation. Plaintiff's position is that when Auto-Owners valued the claim at One Hundred Fifty Thousand ($150,000.00) Dollars but refused to offer that value to its insured, or to even acknowledge that valuation, they breached the express and implied requirements of their contract. The Plaintiff relies, inter alia, on the following cases for support: Nichols v. State Farm, 279 S.C. 336 (S.C. 1983); Myers v. State Farm, 950 F.Supp. 148 (D.S.C. 1997); Tadlock Painting Co. v. Maryland Casualty, 322 S.C. 498 (1996); Ocean Winds v. Auto-Owners, 241 F.Supp.2d 572 (D.S.C. 2002); Newport v. USAA, 2000 OK 59, 11 P.3d 190 (2000); and Howard v. State Farm, 316 S.C. 445, 450 S.E.2d 582 (1994).

The Defendant responds to Plaintiff's arguments and asserts that there is no South Carolina case or statute which imposes a duty upon an insurer to extend a settlement offer of the insurer's highest evaluation of a UM claim. Defendant also asserts that there is no deposition testimony or correspondence wherein Auto-Owners ever agreed that Plaintiff was legally entitled to recover any amount of UM benefits. Defendant reiterates that Plaintiff's own expert conceded the amount Auto-Owners owes on the UM claim is "zero as per trial" (Morgan Deposition, p. 98) and that contractually after the trial Auto-Owners owed nothing. (Morgan Deposition, p. 99). Finally, Defendant asserts

13

that because the jury returned a verdict for Frasier in the Collins v. Frasier trial, the Plaintiff is not legally entitled to recover damages from Frasier, the owner and operator of an uninsured automobile. Defendant relies on the case of Snyder v. State Farm, 586 F. Supp.2d 453 (2008).

After careful review of the arguments by both parties, the insurance contract at issue, as well as the relevant case law, this Court finds Defendant's position to be sufficiently persuasive. In the case of Lawson v. Porter, 180 S.E.2d 642 (1971), the Supreme Court of South Carolina indicated that "[r]ecovery under the uninsured endorsement is subject to the condition that the insured establish legal liability on the part of the uninsured motorist." In a more recent South Carolina Court of Appeals case, McDill v. Nationwide Mut. Ins. Co, 627 S.E. 2d 749 (2006),[5] this Court finds the analysis done by the South Carolina Court of Appeals to be instructive. In that case, a mother and father whose son was injured in automobile accident brought action against insurers to reform two insurance policies to include underinsured motorist (UIM) coverage. The trial court entered judgment reforming the policies on ground that insurers did not make a meaningful offer of UIM coverage. The Insurers appealed. The appeal was held in abeyance pending the resolution of a separate tort action against the driver and owner of the other vehicle involved in the accident, among others, which ended in a judgment in favor of the defendants. After the resolution of the tort action, the Court of Appeals held that the issue of whether the policies at issue should be reformed to include underinsured motorist (UIM) coverage was mooted by entry of judgment against mother and son in their tort action against driver and owner of other vehicle involved in accident. The Court noted that:

> In the underlying tort case, a jury determined the McDills were not entitled to any damages from the owner or driver of the underinsured vehicle; therefore, we hold the McDills would

[5]This Court is not persuaded by Plaintiff's attempts to distinguish McGill.

not be entitled to UIM coverage under either Nationwide policy even if the policies were reformed to provide UIM coverage. The Nationwide policies provided as follows:

> **We** will pay damages ... because of **bodily injury** suffered by **you** or a **relative,** and because of **property damage.** Such damages must be due by law to **you** or a **relative** from the owner or driver of: ... an **underinsured motor vehicle**....

Thus, since the underlying tort action was decided adversely to the McDills, they are not entitled to UIM coverage because they are not entitled to damages from the driver of the underinsured motor vehicle. Any opinion on whether the policies should be reformed would, therefore, be merely advisory.

Id. at 750.

This Court has also reviewed the case of Snyder v. State Farm Mut. Automobile Ins. Co., 586 F. Supp. 2d 453 (2008), where the Court granted summary judgment on a breach of contract claim where there was no provision in the contract between plaintiff and defendant that required defendant to disburse UIM benefits before a formal entry of judgment against the tortfeasor in excess of his liability coverage limits. The Snyder Court noted that the plaintiff's breach of contract claim was virtually identical to the grounds for plaintiff's bad faith failure to pay benefits claim. In finding that plaintiff's breach of contract failed as a matter of law, the Snyder Court noted that the plaintiff could not point to a specific provision of the contract that defendant had violated, nor could it establish an issue of material fact to support his claim that defendant violated its contractual duty to deal with him in good faith. This Court reaches a similar conclusion. In light of the reasoning of these cases and based on the arguments made by Defendant, which the Court finds to be sufficiently persuasive, this Court finds that Plaintiff's breach of contract claim fails as a matter of law.[6]

---

[6]As in the Snyder case, this Court finds some overlap in the basis for Plaintiff's first and second grounds for relief. The Court notes that it reaches its conclusion on this first cause of action in conjunction with its analysis and conclusion on Plaintiff's second claim for bad faith refusal to pay an insurance claim.

The Court will now address Plaintiff's second cause of action for bad faith refusal to pay an insurance claim. "[I]f an insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, he can recover consequential damages in a tort action." Nichols v. State Farm Mut. Auto. Ins. Co., 279 S.C. 336, 340, 306 S.E.2d 616, 619 (1983). Furthermore, a bad faith claim may exist even in the absence of any violation of an insurance contract provision, as "the benefits due an insured are not limited solely by those expressly set out in the contract." Tadlock Painting Co. v. Maryland Cas. Co., 322 S.C. 498, 503, 473 S.E.2d 52, 55 (1996). The elements of a bad faith refusal to pay action are: (1) the existence of a contract of insurance between the parties; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action; and (4) causing damage to the insured. Howard v. State Farm Mut. Auto. Ins. Co., 316 S.C. 445, 451, 450 S.E.2d 582, 586 (1994).

Auto-Owners asserts that it is entitled to summary judgment on the Plaintiff's second cause of action for bad faith refusal to pay because the Plaintiff cannot prove the second element of this claim, that being, refusal of the insurer to pay benefits due under the contract. Auto-Owners argues that the Plaintiff's own expert witness concedes that it has not refused to pay benefits due under the contract of insurance. Additionally, Auto-Owners asserts that the defense verdict in the Collins v. Frasier trial means that Auto-Owners owes no UM benefits to the Plaintiff. Accordingly, Auto-Owners asserts that it has not refused to pay benefits due under the contract of insurance. Auto-Owners also argues that it is entitled to summary judgment on the bad faith cause of action because, even construing the facts most strongly in favor of the Plaintiff, Auto-Owners did not act in bad faith

or unreasonably. Finally, Auto-Owners asserts that it is entitled to summary judgment because it has not caused the Plaintiff any damages.[7]

Plaintiff asserts that an uninsured motorist carrier owes their insured a duty of honesty, good faith and fair dealing; and that such duty requires the carrier to do an honest internal valuation of the claim and pay the honest internal valuation to its insured. Plaintiff argues that the failure to do so constitutes bad faith. Plaintiff suggests that the evidence in the claim file presents a triable genuine issue of material fact as to whether Auto-Owners offered their insured, the Plaintiff, their honest internal valuation of his first party uninsured claim. Plaintiff argues that an email from supervisor Kathleen Lopilato to her subordinate Lorraine Frederick dated August 23, 2005, in which Ms. Lopilato indicated "I don't necessarily disagree with your number of $150,000.00 to resolve," establishes a genuine issue of material fact as to whether Auto-Owners valued the Plaintiff's claim at One Hundred Fifty Thousand ($150,000.00) Dollars, but refused to offer it to him. Plaintiff asserts that this correspondence establishes that the carrier valued the claim at least at One Hundred Fifty Thousand ($150,000.00) Dollars and refused to offer their insured more than One Hundred Thousand ($100,000.00) Dollars.

If there is a reasonable ground for contesting a claim there is no bad faith. Crossley v. State Farm Mutual Automobile Insurance Company, 415 S.E.2d 393 (S.C. 1992). See also Snyder v. State Farm Mutual Automobile Ins. Co., 586 F. Supp 2d 453 (2008). By logical extension, if there is a reasonable ground for offering less than the full amount demanded on a claim, then there is no bad

---

[7]Auto-Owners also asserts that to the extent that Plaintiff seeks as an element of damages recovery for what, in the Plaintiff's view, the Collins v. Frasier case could or should have settled for, those damages are inherently speculative and conjectural and cannot be established with any reasonable certainty.

faith in negotiations.  Wilkins v. State Farm Mutual Ins. Co., 2008 WL 2690240 (D.S.C. 2008).

Whether an offer is reasonable and made in good faith must be tested based on what was known at

the time.  Id.  It must also consider the very nature of negotiations. As explained in the opinion in

Snyder v. State Farm Mutual Automobile Ins. Co., 586 F. Supp 2d 453, 460 (2008):

> . . . [i]t is not the role of the courts to impose rigid rules and guidelines upon the conduct of parties in the settlement process.  Settlement negotiations are best served by as much flexibility as possible so long as the parties are negotiating in good faith, as this allows both parties to make proposals which are best suited to serve their particular needs. Artificial constraints or requirements placed upon the options available to the bargaining parties would generally only serve to frustrate attempts to reach a mutually agreeable settlement.

The Court in Snyder also noted that "a duty to deal in good faith does not necessarily entail a duty

to make a settlement offer."  Id. at 458.

The initial offer made in this case was not insignificant.  Additionally, as supported by the

state court verdict in the Collins v. Frasier litigation, Defendant had at least a reasonable basis for

raising questions as to liability and damages.[8]  As asserted by Defendant, information gathered by

---

[8] The Court finds it necessary to address whether and/or to what extent it should consider the verdict in the Collins v. Frasier litigation.  Plaintiff characterizes Defendant's position as follows: Defendant essentially argues that its breach of contract and its tortious conduct was wiped clean by the defense verdict in the case of Collins v. Frasier.  Plaintiff asserts that pursuant to Howard v. State Farm, 316 S.C. 445, 450 S.E.2d 582 (1994), all evidence that arises after the filing of a bad faith claim is not relevant. Accordingly, Plaintiff asserts that what happened at that trial is irrelevant and cannot be used to excuse the Defendant's conduct in the handling of this claim.

This Court is cognizant of the case of Howard v. State Farm, where the South Carolina Supreme Court indicated that:

> Whether an insurance company is liable for bad faith must be judged by the evidence before it at the time it denied the claim or if the insurance company did not specifically deny the claim by the evidence it had before it at the time the suit was filed. Evidence that arises after the denial of the claim is not relevant to the propriety of the conduct of the insurer at the time of its refusal. Likewise, if the insurance company did not specifically deny the claim evidence that arises after the filing of the bad faith claim is not relevant.

Auto-Owners' attorney Mike Nunn revealed that Frasier had a legitimate defense to the issue of liability based on Frasier's sudden incapacity. (Nunn Affidavit, ¶ 6) The Plaintiff's expert witness concedes that in <u>Collins v. Frasier</u> case there could be reasonable differences of opinion about liability. (Morgan Deposition, p. 101). In addition to issues of liability, other issues concerned the amount of the Plaintiff's damages, as information gathered by Nunn indicated the Plaintiff had substantial preexisting conditions unrelated to the accident with Frasier. (Nunn Affidavit, ¶¶ 7, 8). Under these circumstances, there was room to debate the value of Plaintiff's claim. Despite having a legitimate question about whether Frasier had any liability to the Plaintiff and legitimate issues on whether Frasier caused the Plaintiff damages, Auto-Owners nonetheless offered $100,000 to settle the UM claim. In response the Plaintiff's demand was never less than $1 million.[9]

The Plaintiff's expert's opinion on the range of Calvin Collins' case is much closer to the amount offered by Auto Owners ($100,000) than the Plaintiff's lowest settlement demand of $1 million – "I think [Calvin Collins' case] had a range probably of $125,000 to maybe $200,000." (Morgan Deposition, p. 91). Morgan furthered testified that:

Thus, testimony concerning the adjuster's handling of the claim after litigation commenced was irrelevant.
<u>Id</u>. at 448-449. (citations omitted).
However, the Court notes that it is not considering the judgment in the <u>Collins v. Frasier</u> litigation as substantive evidence of bad faith or the lack thereof. However, the Court does believe that this judgment is relevant evidence that suggests that there was a reasonable basis to dispute the value of the underlying state case. Accordingly, the Court finds it appropriate to consider the verdict for this purpose. The Courts notes that its decision in this case would not be altered even if the <u>Collins v. Frasier</u> verdict were not considered by it, even for this limited purpose.

[9]The Court notes that for purposes of its analysis the factual distinction of whether Plaintiff increased his settlement demand from $1 million to $1.3 million in its April 5, 2006 correspondence, or whether Plaintiff merely recited a previous demand, and never <u>increased</u> his settlement demand is irrelevant.

Q.  Do you think that Calvin Collins' bodily injury claim was worth $1.5 million?

A.  No.

Q.  Was it worth $1.3 million?

A.  No.

Q.  Was it worth $1 million?

A.  No.

(Morgan Deposition, p. 92)

This testimony establishes the Plaintiff's lowest settlement offer exceeded the range of value of Calvin Collins' case. Morgan further testified that:

Q.  If the range of value of Calvin Collins' bodily injury claim was $125,000 to $200,000, would you regard a settlement demand of $1.5 million as reasonable?

A.  No.

Q.  Would you regard a settlement demand of $1.3 million as reasonable?

A.  No.

Q.  Would you regard a settlement demand of $1 million as reasonable?

A.  No, but I would consider it as getting close.

(Morgan Deposition, pp. 92, 93)

Auto-Owners argues that this testimony establishes the Plaintiff's lowest settlement offer was unreasonable. Finally, Morgan conceded Auto-Owners' initial offer was reasonable:

Q.  Well, let me ask you this. Do you think that the offer of $100,000 as an opening offer was unreasonable?

A.  No.

Q.  So you think that the opening offer of $100,000 was a reasonable opening offer?

20

A.    Yes.

(Morgan Deposition, p. 117).

Given the circumstances outlined herein this Court concludes that the value of Plaintiff's claim could reasonably be debated.  In fact, this Court believes that the judgment in the <u>Collins v. Frasier</u> case is evidence that there was a reasonable basis to dispute exactly what this case was worth. Because the record establishes that there was a reasonable ground for contesting this claim, and by extension, a reasonable ground for offering less than the full amount demanded on the claim, this Court is not persuaded that there was any bad faith.  Additionally, the Court finds insufficient evidence in the record that the insurance company manipulated or misvalued this case at an amount of $150,000.  This Court has considered the substantial initial offer made by Auto-Owners and the substantial difference between the parties outstanding demand/offer figures.  The Court is not persuaded that under the existing legal authority (and based on the facts of this case) that Defendant Auto-Owners was required to extend a settlement offer of  $150,000 as its highest evaluation of the UM claim after its initial offer of $100,000, in light of the fact that the parties remained at least $900,000 dollars a part.  After careful consideration of the parties' respective positions as well as the case law relevant to these issues, the Court finds that the conduct of Defendant Auto-Owners was reasonable under the circumstances of this case.  The Court finds Defendant's position in this case to be sufficiently persuasive and concludes that Plaintiff has not established an issue of material fact as to his claim for bad faith refusal to pay.  This Court determines that as a matter of law that Auto-Owners did not act in bad faith.[10]

_____

[10]Again, the Court has considered the following cases cited by Plaintiff: <u>Nichols v. State Farm</u>, 279 S.C. 336 (S.C. 1983); <u>Myers v. State Farm</u>, 950 F.Supp. 148 (D.S.C. 1997); <u>Tadlock</u>

**Conclusion**

Based on the foregoing, this Court concludes that Defendant Auto-Owners is entitled to summary judgment. Accordingly, for the foregoing reasons, the undersigned **GRANTS** Defendant Auto-Owner's motion for summary judgment as outlined herein.

**IT IS SO ORDERED.**

s/ Terry L. Wooten

December 8, 2010                                        Terry L. Wooten

Florence, South Carolina                          United States District Court Judge

---

Painting Co. v. Maryland Casualty, 322 S.C. 498 (1996); Ocean Winds v. Auto-Owners, 241 F.Supp.2d 572 (D.S.C. 2002); Newport v. USAA, 2000 OK 59, 11 P.3d 190 (2000); and Howard v. State Farm, 316 S.C. 445, 450 S.E.2d 582 (1994). However, the Court is not persuaded that the analysis in any of these cases would alter this Court's conclusions in the case at bar.